**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT JACOBSEN, et al., | |
| Plaintiffs, | Civil Action No. 14-3094 |
| v. | (Consolidated with Civil Action Nos. 13-6910 and 13-7160) |
| HARTFORD INSURANCE COMPANY FLOOD & HOME (SANDY), et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

      This matter comes before the Court upon seven summary judgment motions in connection with three consolidated actions.[1] Plaintiffs Robert and Carol Jacobsen (collectively, "Plaintiffs" or the "Jacobsens") filed three Motions for Summary Judgment against Hartford Insurance Company Home and Flood ("Hartford-Property") and Hartford Insurance Company of the Midwest ("Hartford-Flood") (collectively, "Defendants")[2] seeking recovery for: (1) losses sustained to their home and property during Hurricane Irene (Docket No. 13-6910, ECF No. 97); (2) damage to their

---

[1] Plaintiffs originally brought the three causes of action in the New Jersey Superior Court (Docket Nos. L-2077-13, L-2059-13, L-2932-13.) Hartford-Flood removed to this Court, and upon removal, the Honorable Tonianne Bongiovanni, U.S.M.J., ordered the three cases to be consolidated for discovery purposes. (Docket No. 14-3094, ECF No. 9.)

[2] Because Plaintiffs seek recovery under both their Hartford homeowners policy and their National Flood Insurance Program ("NFIP") policy issued by Hartford, in its capacity as a Write-Your-Own ("WYO") program carrier, Hartford filed separate summary judgment motions as a private insurer ("Hartford-Property") and as a WYO carrier ("Hartford-Flood"). The Court treats Hartford-Property and Hartford-Flood as two separate Defendants because Defendants are represented by separate counsel and have stated that one's assertions should not be attributed to the other. (*See* Hartford-Flood's Moving Br. 1, Docket No. 13-6910, ECF No. 91-1.)

dock during Superstorm Sandy (Docket No. 13-7160, ECF No. 110); and (3) losses sustained to their home and property during Superstorm Sandy (Docket No. 14-3094, ECF No. 102).[3] Each Defendant filed one Omnibus Opposition Brief ("Hartford-Flood's Omnibus Opposition Brief" or "Hartford-Property's Omnibus Opposition Brief," respectively) with regard to all three of Plaintiffs' consolidated actions. (Docket No. 13-6910, ECF Nos. 103, 104; Docket No. 13-7160, ECF Nos. 116, 117; Docket No. 14-3094, ECF Nos. 105, 106.)

Additionally, Hartford-Flood filed three Motions for Summary Judgment related to: (1) Hurricane Irene flood losses (Docket No. 13-6910, ECF No. 91); (2) Superstorm Sandy flood losses (Docket No. 14-3094, ECF No. 92); and (3) Superstorm Sandy dock losses (Docket No. 13-7160, ECF No. 105). Hartford-Property also filed one Motion for Summary Judgment concerning the Superstorm Sandy dock losses. (Docket No. 13-7160, ECF No. 104.) Plaintiffs responded to all of Defendants' Motions in one Omnibus Opposition Brief ("Plaintiffs' Omnibus Opposition Brief"). (Docket No. 13-6910, ECF No. 111; Docket No. 13-7160, ECF No. 124; Docket No. 14-3094, ECF No. 113.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motions for Summary Judgment are DENIED, and Defendants' Motions for Summary Judgment are GRANTED.

## I.     Procedural History

After a preliminary review of Plaintiffs' original summary judgment submissions, the Court issued an Order on September 22, 2016, notifying Plaintiffs of the deficiencies in their

---

[3] As Plaintiffs filed the same omnibus submission in all three consolidated actions, the Court cites to Plaintiffs' motion papers as "Pls.' Summ. J. Mot." without designating a particular docket number.

original submissions. (Docket No. 13-6910, ECF No. 105.) The Court notified Plaintiffs that their Motions for Summary Judgment did not comply with Local Civil Rule 56.1, which requires a motion for summary judgment to be accompanied by a statement of material facts not in dispute. (*Id.*) The Court further provided the precise language of Local Civil Rule 56.1 in its Order so that Plaintiffs would be aware of the relevant rule and comply with the Court's request without having to independently locate the relevant rule. (*Id.*) The Court further notified Plaintiffs that their original opposition to Defendants' Motions for Summary Judgment also failed to comply with Local Civil Rule 56.1, which requires the nonmoving party to furnish a responsive statement of material facts addressing the moving party's statement of material facts not in dispute. (*Id.*) The Court again provided Plaintiffs with the precise language of Local Civil Rule 56.1. (*Id.*)

In Plaintiffs' Omnibus Opposition Brief to Defendants' Motions for Summary Judgment, Plaintiffs stated, "we are in receipt of the order from Judge Shipp dated September 22[,] 2016." (Pls.' Omnibus Opp'n Br. 1.) While Plaintiffs' Omnibus Opposition Brief attempts to comply[4] with Rule 56.1's requirement that Plaintiffs respond to Defendants' Statement of Undisputed Material Facts, Plaintiffs failed to file anything resembling their own Statement of Undisputed Material Facts, as outlined in the Court's September 22, 2016 Order.

Additionally, the Court notes that Local Civil Rule 56.1 allows courts some leniency when a pro se litigant fails to file a statement of material facts. *Oguguo v. Wells Fargo Bank*, No. 14-2383, 2016 WL 3041853, at *1 n.3 (D.N.J. May 27, 2016). Here, however, the Court provided

---

[4] Plaintiffs failed to cite affidavits or other documents in support of their disagreement with any of Defendants' alleged statements of undisputed material fact. The Court notes that, when setting forth the relevant excerpt of Local Civil Rule 56.1 for Plaintiffs' convenience in its September 22, 2016 Order, the Court formatted the provision requiring Plaintiffs to cite to affidavits or documents in bold and italics. (*See* Sept. 22, 2016 Order, Docket No. 13-6910, ECF No. 105.)

Plaintiffs a second opportunity to file their Statement of Undisputed Material Facts with explicit instructions, which included the relevant provision of Local Civil Rule 56.1. *Id.* Moreover, Plaintiffs stated in their Omnibus Opposition Brief, "Rule 56.1 does not apply," suggesting that Plaintiffs intentionally disregarded the Court's Order. (Pls.' Omnibus Opp'n Br. 2.) Accordingly, Plaintiffs' failure to comply with Local Civil Rule 56.1 alone constitutes sufficient grounds for the Court to deny Plaintiffs' Motions. Nevertheless, in the interest of justice, the Court addresses the merits of Plaintiffs' claims as set forth below.

Moreover, in light of Plaintiffs' pro se status, the Court adopts the approach taken in *Oguguo v. Wells Fargo Bank*: "district court judges often relax procedural rules for an unrepresented litigant. In these circumstances, the Court may draw relevant facts from the record, including a plaintiff's deposition testimony." *Oguguo*, 2016 WL 3041853, at *1 n.3. A party's pro se status, however, "does not absolve him of the requirement under Local [Civil] Rule 56.1(a)." *Tennessee Gas Pipeline Co., L.L.C. v. 1,6983 Acres of Land in the Twp. of Mahwah*, No. 12-7921, 2015 WL 2079661, at *7 n.6 (D.N.J. May 4, 2015). Accordingly, while the Court combed through Plaintiffs' voluminous and disorganized submissions[5] for potential indications of undisputed material facts, the Court is unable to speculate with precision what Plaintiffs intended to argue and

---

[5] Plaintiffs' Summary Judgment submission was 388 pages, consisting almost entirely of miscellaneous exhibits, and lacking a brief, statement of facts, or any other summary or coherent presentation of what Plaintiffs intend to argue on summary judgment. (*See generally* Pls.' Summ. J. Mot.) Specifically, Plaintiffs' submission contains various orders filed in the instant litigation, electronic filing notices, slide presentations relating to insurance law, the Court's standing orders relating to Superstorm Sandy cases, public documents concerning case management in Superstorm Sandy cases, public documents issued by FEMA (including slide presentations and adjuster claims manuals), compilations of case law related to Superstorm Sandy claims, presentations by the defense bar in the District of New Jersey, biographies and resumes of defense bar experts, and copies of Plaintiffs' prior filings. Plaintiffs subsequently submitted sixty-one pages of similarly disorganized additional documents in support of their Motions. (Docket No. 14-3094, ECF No. 102.)

what facts Plaintiffs believe to be undisputed in support of their Motions for Summary Judgment. *See Clawans v. United States*, No. 98-3053, 2000 WL 1887786, at \*13 (D.N.J. Dec. 26, 2000) ("To the extent that the lack of a Statement of Undisputed Facts has hampered this process [of reviewing the record and materials submitted], any complaint that some piece of evidence was overlooked, for example in a motion for reconsideration, is correspondingly attenuated.").

## II.   Background

### A.   Hurricane Irene

#### 1.   Undisputed Facts

1.   Plaintiffs owned property at 49 Bay Way in Brick Township, New Jersey (the "Property") and maintained flood and homeowner's insurance issued by Defendants. (Hartford-Flood's Statement of Undisputed Material Facts ("SUMF") ¶¶ 1, 2, Docket No. 13-6910, ECF No. 91-2.)

2.   Hurricane Irene made landfall in New Jersey on August 26, 2011, and it caused wind and flood damage to the Property. (*Id.* ¶ 1.)

3.   At the time, the Jacobsens' flood insurance on the Property covered structural damages up to $250,000 and contents damage up to $100,000. (*Id.* ¶ 2.)

4.   After the hurricane, Hartford-Flood sent an adjuster to inspect Plaintiffs' home. (*Id.* ¶ 3.) The adjuster identified damages caused by flooding in the amount of $5,600.34. (*Id.*)

5.   The adjuster sent multiple e-mail messages and left several telephone messages in an attempt to contact Plaintiffs, and prepared a proof of loss statement ("proof of loss") for Plaintiffs to sign and return. (*Id.* ¶¶ 3-4.)

6.      Plaintiffs failed to sign and return the proof of loss, and Defendants sent correspondence on November 11, 2011, informing Plaintiffs that failure "to file a timely proof of loss is a violation of the policy conditions." (*Id.* ¶ 5.)

7.      The adjuster made several subsequent attempts to have Plaintiffs sign and submit the proof of loss coupled with the appropriate documentation. (*Id.* ¶ 6.)

8.      Under the Standard Flood Insurance Policy ("SFIP"), a policyholder is required to complete and send a proof of loss to the WYO carrier within sixty days. (*Id.* ¶ 7; *see also* SFIP VII (J)(4).)[6] The Federal Emergency Management Agency ("FEMA") extended the deadline for Hurricane Irene losses to 150 days from the original date of loss. (Hartford-Flood's SUMF ¶ 7, Docket No 13-6910.)

9.      On June 4, 2012, Hartford-Flood denied Plaintiffs' claim based on Plaintiffs' failure to sign and return the proof of loss and submit proper documentation. (*Id.* ¶¶ 8-10.)

10.     Plaintiffs appealed Hartford-Flood's denial of their flood claim to FEMA, who investigated and determined that Plaintiffs submitted their proof of loss on March 5, 2012. (*Id.* ¶ 11.)

11.     FEMA sent correspondence to Plaintiffs explaining that the proof of loss had not been submitted within the proper time period and Hartford-Flood applied "the appropriate conditions and exclusions pursuant to the SFIP" when it denied Plaintiffs' claim. (*Id.* ¶ 12.)

12.     In addition to the flood policy, the Jacobsens had a homeowners policy with Hartford-Property, which provided, subject to its terms and conditions, limitations and exclusions, coverage to Plaintiffs for direct physical loss of or damage to the Property "caused by or resulting from a covered cause of loss." (Hartford-Property's Counter-Statement of Undisputed Material Facts ("CSUMF") ¶ 2, Docket No. 13-6910, ECF No. 103-1.)

---

[6] The SFIP is codified at 44 C.F.R. Pt. 61, App. A(1).

6

13.   On August 13, 2012, almost one year after Hurricane Irene damaged Plaintiffs' Property,
      Plaintiffs provided Hartford-Property with notice of their Hurricane Irene losses. (*Id.* ¶ 3.)

14.   Hartford-Property attempted to schedule an inspection of the Property to assess the
      damage, but it was postponed by the Jacobsens. (*Id.*)

15.   Hartford-Property's adjuster performed an inspection of the Property on October 16, 2012,
      which resulted in the adjuster determining that there was "water damage to the drywall
      ceilings in the living room, bedrooms, kitchen and dining room"; "damage to the walls and
      floor in the master bedroom"; "the pool cover and pool liner were damaged due to winds";
      "three small sections of vinyl fencing were in need of straightening and strengthening";
      "damage to [the] pool pump and pool filter system"; and "severe damage to Plaintiffs' dock
      attributable to tidal surges." (*Id.* ¶ 4.)

16.   After assessment of the damage, Hartford-Property issued to Plaintiffs a partial payment
      of $3,810.05 on October 19, 2012. (*Id.* ¶ 5.) Hartford-Property also advised that a
      supplemental claim for $3,590.04 could be filed for recoverable depreciation holdback, in
      accordance with the policy, once repairs were completed.[7] (*Id.*)

17.   Hartford-Property subsequently sent denial correspondence in which it outlined portions
      of the Hurricane Irene losses that were not covered by the policy. (*Id.* ¶ 6.) Specifically,
      the correspondence indicated that the Hartford-Property insurance policy excluded any
      water damage from "flood, surface water, tidal water, overflow of a body of water . . .

---

[7] Plaintiffs' response to Hartford-Property's CSUMF ¶ 5 provided: "There was no direct
advisement about a second claim check." (Pls.' Omnibus Opp'n Br. 3.) Plaintiffs fail to cite any
affidavits or other documents in support of their dispute as required under Local Civil Rule 56.1(a).
Additionally, there is clear evidence to the contrary. (Hartford-Property's Summ. J. Mot., Ex. K,
Docket No. 13-6910, ECF No. 103-4.) The Court, therefore, finds that Hartford-Property's
CSUMF ¶ 5 is undisputed.

whether or not driven by wind." (Hartford-Property's Omnibus Opp'n Br., Ex. L, Docket No. 14-3094, ECF No. 105-4.)

18.    On March 8, 2013, Plaintiffs appealed Hartford-Property's determination of the Hurricane Irene losses. (Hartford-Property's SUMF ¶ 7, Docket No. 14-3094.)

      2.    <u>Disputed Facts</u>

19.    Whether Defendants owe Plaintiffs the full flood and homeowners insurance policy limits amounting to $86,000.00.[8] (Pls.' Summ. J. Mot. 1.)

  **B.    Superstorm Sandy**

      1.    <u>Undisputed Facts</u>

20.    Plaintiffs continued to own the Property after Hurricane Irene. (Hartford-Property's CSUMF ¶ 8, Docket No. 14-3094, ECF No. 105-1.)

21.    At the time Superstorm Sandy struck Plaintiffs' property, Plaintiffs' Hartford-Flood policy covered structural damages up to $250,000 and contents damages up to $100,000. (Hartford-Flood's SUMF ¶ 2.)

22.    The Hartford-Property insurance policy provided coverage to Plaintiffs for direct physical loss or damage to the Property resulting from a covered loss subject to certain terms, conditions, limitations, and exclusions. (Hartford-Property's CSUMF ¶ 9.)

23.    On October 29, 2012, Superstorm Sandy made landfall in New Jersey. (*Id.* ¶ 8.)

24.    Nearly six weeks later, on December 10, 2012, Plaintiffs first notified Hartford-Property of their Superstorm Sandy losses and subsequently scheduled an inspection. (*Id.* ¶ 10.)

---

[8] The Court acknowledges that this allegation consists of both fact and law. The Court lists the allegation as a disputed fact only to the extent that it constitutes an issue of fact, and the issue of law is separately discussed in the Discussion section below. Specifically, issues of fact remain as to the causes of the damages at issue, whether the damages were preexisting, and as to the correct valuation of the damages.

25.   Upon inspection, on December 28, 2012, Hartford-Property's adjuster determined that Plaintiffs' Property had "sustained significant flood damage to both the exterior and interior." (*Id.* ¶ 11.)

26.   Defendants' adjuster also noted there was "[n]o storm related damage . . . to the main roof, but some limited damage was observed to the lower roof of a shed attached to the dwelling on the left side." (*Id.*)

27.   The adjuster also noticed "water damage to the ceilings throughout the house." (*Id.*)

28.   The adjuster noted, however, that the Superstorm Sandy loss damages matched the damages depicted in prior photographs from Hurricane Irene. (*Id.*)

29.   Hartford-Property concluded its adjustment of Plaintiffs' Superstorm Sandy loss claims on January 8, 2013 and sent correspondence advising Plaintiffs that "any Sandy Loss damages unrelated to flooding and not overlapping with the Irene Loss would be covered." (*Id.* ¶ 12.)

30.   Additionally, Hartford-Flood issued Plaintiffs a payment of $114,840.99 for flood damage to Plaintiffs' home and $41,821.75 for damage to personal property within the house. (Hartford-Flood's SUMF ¶ 3, Docket No. 13-7160.) The payments were based on estimates submitted by Simsol Insurance Services. (Hartford-Flood's SUMF ¶ 4.)

31.   Plaintiffs disagreed with the estimates and sought additional payments from Defendants. (*Id.* ¶ 5.) Defendants declined to disburse any additional payments without valid supporting documentation justifying any supplemental payments. (*Id.* ¶ 6.)

32.   Plaintiffs provided a nineteen-page loss estimate statement, which outlined various losses Plaintiffs allegedly suffered as a result of Superstorm Sandy. (*Id.* ¶¶ 17-18; Hartford-Flood's Summ. J. Mot., Ex. F, Docket No. 14-3094, ECF No. 92-2; Pls.' Omnibus Opp'n Br. 4.)

2.     Disputed Facts[9]

33.     Whether the inspection by Hartford-Property was faulty. (Pls.' Omnibus Opp'n Br. 3.)

34.     Whether Plaintiffs cannot separate what they are owed from Hartford-Property and what they are owed from Hartford-Flood for damages. (Hartford-Property's Omnibus Opp'n Br. 9.)

35.     Whether Plaintiffs cannot determine which damages arose from Superstorm Sandy as opposed to Hurricane Irene. (*Id.*)

**C.     Superstorm Sandy Dock**

1.     Undisputed Facts[10]

36.     After Superstorm Sandy, Plaintiffs noticed an unmoored boat in Plaintiffs' backyard and Plaintiffs believed that the boat damaged their dock during Superstorm Sandy. (Hartford-Property's SUMF ¶ 8, Docket No. 13-7160, ECF No. 104-4.)

37.     Specifically, Plaintiffs believed that Superstorm Sandy caused the boat to damage their dock due to a combination of high winds, high tides, rain, and surges. (Compl. ¶ 1, Docket No. 13-7160, ECF No. 1-1.)

---

[9] The Court acknowledges that these allegations consist of both fact and law. The Court lists the allegations as disputed facts only to the extent that they constitute issues of fact, and the issues of law are separately discussed in the Discussion section below. Specifically, issues of fact remain as to the causes of the damages at issue, whether the damages were preexisting, and as to the correct valuation of the damages.

[10] Based on the Court's review of Robert Jacobsen's deposition, it seems that Plaintiffs are claiming that Defendants completely ignored Plaintiffs' claim regarding the dock, which disputes Defendants' allegations concerning their responses to Plaintiffs' dock claim. (Hartford-Property's Summ. J. Mot., Ex. E, ("Jacobsen Dep.") 169:6-172:16, Docket No. 13-7160, ECF No. 104-3.) Plaintiffs, however, fail to cite any affidavits or other documents in support of their dispute as required under Local Civil Rule 56.1(a). Additionally, there is clear evidence to the contrary as set forth in Defendants' respective statements of undisputed material facts. Accordingly, the Court sets forth the following factual allegations as undisputed.

38.   Although Plaintiffs did not see the damage actually occur, Plaintiffs believed that the unmoored boat caused the damage because the docks on neighboring properties were not similarly damaged during Superstorm Sandy. (Hartford-Property's SUMF ¶ 8, Docket No. 13-7160.)

39.   Plaintiffs' insurance policy with Hartford-Property "exclude[d] coverage for all losses caused directly or indirectly by" water damage. (Hartford-Property's Omnibus Opp'n Br., Ex. E, at 72-73,[11] Docket No. 14-3094, ECF No. 105-4.)

40.   Hartford-Property's insurance policy defines "water damage" as damage caused by "[f]lood, surface water, waves, tidal water, overflow of a body of water . . . caused by or resulting from human or animal forces or act of nature." (*Id.* at 73.)

41.   Additionally, the insurance policy issued by Hartford-Property excludes coverage for loss caused by "pressure or weight of water . . . whether driven by wind or not, to a: . . . [p]ier, wharf or dock." (*Id.* at 67.)

42.   On February 26, 2013, Plaintiffs notified Defendants of a supplemental claim concerning damage to their dock due to the unmoored boat. (Hartford-Property's CSUMF ¶ 13, Docket No. 13-7160, ECF No. 116-1.)

43.   Defendants made various requests for documentation concerning the unmoored boat loss via correspondence dated March 21, 2013, April 8, 2013, May 7, 2013, and June 6, 2013. (*Id.*)

44.   On June 3, 2013, Hartford-Flood explained to Plaintiffs that the damage to their dock was not covered by the flood policy. (Hartford-Flood's Moving Br. 3, Docket No. 13-7160,

---

[11] When referencing Exhibit E, the Court cites to the ECF page numbers stamped on the header of the electronically filed version of the document as the page numerations are not continuous throughout the document.

ECF No. 105-1; *see also* June 3, 2013 Letter from Hartford to Pls., Ex E, Docket No. 13-7160, ECF No. 105.)

> 2.    Disputed Facts

45.    Whether Plaintiffs are owed around $76,000 from Hartford-Flood for damage to their dock resulting from the unmoored boat and $5,000 for the removal of the boat from their property.[12] (Hartford-Flood's Moving Br. 4, Docket No. 13-7160, ECF No. 105-1.)

## III.   **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250).

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the nonmoving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party to "set forth

---

[12] The Court acknowledges that this allegation consists of both fact and law. The Court lists the allegation as a disputed fact only to the extent that it constitutes an issue of fact, and the issue of law is separately discussed in the Discussion section below. Specifically, Plaintiffs argue that the dock losses "should have been fully covered by the wind rain policy." (Pls.' Omnibus Opp'n Br. 3.) Based on this statement, it seems that Plaintiffs may be disputing the particular sequence of events with regard to the boat. Nevertheless, as set forth above, it is undisputed that the damage to the dock was caused by a combination of high winds, high tides, rain, and tidal surges.

specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 447 U.S. at 250. If the non-moving party fails to:

> make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . . there can be "no genuine [dispute] of material fact," [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## IV.   Parties' Positions

### A.   Hurricane Irene Flood Claim (Docket No. 13-6910)

Plaintiffs move for summary judgment against Hartford-Flood, alleging that they are entitled to the full extent of the flood policy for flood damages caused by Hurricane Irene. (Pls.' Additional Documents 3, Docket No. 13-6910, ECF No. 100.)[13] Plaintiffs also argue that they are entitled to treble damages to acknowledge an "innocent victim payment." (*Id.*; *see also* Pls.' Summ. J. Mot. 3.)

Hartford-Flood opposed and filed a Motion for Summary Judgment alleging that Plaintiffs cannot recover under the SFIP. (Hartford-Flood's Moving Br. 1-2, Docket No. 13-6910, ECF No. 91-1.) Because Plaintiffs "failed to submit a timely proof of loss in compliance with the SFIP," Hartford-Flood argues that Plaintiffs are not entitled to additional benefits. (*Id.* at 5.) Hartford-Flood argues that "strict adherence to the SFIP proof of loss provision, including the [FEMA-mandated deadline], is a prerequisite to recovery under the SFIP." (*Id.* (citation omitted).)

---

[13] The Court's citation to Plaintiffs' "Additional Documents" references Plaintiffs' filing of "Addition[al] Attachments as to Motion for Summary Judgment," which Plaintiffs filed after filing their Motions for Summary Judgment in each of the three consolidated cases. (Docket No. 13-6910, ECF No. 100; Docket No. 13-7160, ECF No. 113; Docket No. 14-3094, ECF No. 102.)

Hartford-Flood contends that Plaintiffs failed to submit their proof of loss by the January 23, 2012 deadline, notwithstanding the fact that the deadline for FEMA was extended 150 days. (Hartford-Property's SUMF ¶¶ 7-9, Docket No. 13-6910, ECF No. 91-2.)

**B.   Hurricane Irene (Docket No. 13-6910) & Superstorm Sandy (Docket No. 14-3094) Property Claims**

Plaintiffs move for summary judgment against Hartford-Property, alleging that they are entitled to the full extent of the homeowner's policy concerning damages caused by Hurricane Irene and Superstorm Sandy. (*See generally* Pls.' Summ. J. Mot.) Plaintiffs argue (verbatim) that "the full policy limits are applicable for the initial year of coverage and the applicability of the subsequent yearly [e]nforce policies" concerning the Hurricane Irene and Superstorm Sandy Property damages. (Pls.' Additional Documents 3.) Plaintiffs assert (verbatim) that "thusly, payable as the wind and rains roof leakages are applicable . . . for the documented damaged home structure and the personal property be it so without depreciation with a replacement cost value-RCV to be determined." (*Id.*) Plaintiffs further assert that "[t]he home owner policy coverages total approximately $1,697,300." (*Id.*)

Hartford-Property submitted Opposition to Plaintiffs' Summary Judgment Motion, alleging that Plaintiffs lack any evidence in support of their Motion. (Hartford-Property's Omnibus Opp'n Br. 8.) Hartford-Property argues that summary judgment would be improper because "it is beyond dispute that there exist numerous genuine issues of material facts related to Hartford-Property's adjustment to Plaintiffs' insurance claims for damages to their dwelling." (*Id.*) Hartford-Property asserts that, after investigation of the Hurricane Irene claim, it "determined that the actual cash value loss was $11,700.05 and, after subtracting the deductible, made payment to Plaintiffs in the amount of $3,810.05." (*Id.* at 8-9.) Hartford-Property argues that the resulting

Superstorm Sandy damages resulted in an amount less than the deductible, prompting no payment. (*Id.*)

Additionally, Hartford-Property argues that Plaintiffs fail to offer admissible evidence for their claims and, instead, rely on hearsay. (*Id.* at 9.) Hartford-Property further asserts that Plaintiffs could not differentiate which Hurricane Irene loss payments they were seeking "from Hartford-Flood versus Hartford-Property," and further could not differentiate between the Hurricane Irene damages and the Superstorm Sandy damages. (*Id.*) Hartford-Property argues that based on all of the issues above, "it will unfortunately be necessary for a factfinder to evaluate and determine what the cause of some of the alleged damages were"; "whether some of the damages were pre-existing"; and "if some damages are found to be covered under the Hartford-Property policies— what the correct valuations would be." (*Id.* at 10.)

## C.   Superstorm Sandy Flood Claim (Docket No. 14-3094)

Plaintiffs move for summary judgment against Hartford-Flood, alleging that they are entitled to the full extent of the flood policy concerning flood damages caused by Superstorm Sandy. (Pls.' Additional Documents 2.) With respect to Superstorm Sandy flood damage, Plaintiffs argue (verbatim) that "the full flood policy limits are applicable—payable as the winds and rains roof leakages were documented." (*Id.*) Plaintiffs argue that "[t]he structure coverage limit of $250,000 with [replacement cost value][14] and the personal property coverage limit $100,000 also with RCV should be adjusted with a fifty-percentage factor," and, therefore, the total loss owed to them from Hartford-Flood is $525,000. (*Id.* at 3.) Further, Plaintiffs argue that they are entitled to treble damages to acknowledge an "innocent victim payment" which "would bring the [e]nforce

---

[14] Replacement Cost Value ("RCV") is the actual cost in today's dollars to repair or replace an item(s) back to pre-loss condition.

total flood policy settlement loss to the previous estimate of $1,550,000 is now at $1,575,000." (*Id.*) Plaintiffs additionally argue that "the disclosure of the damage and the possible losses figures were identified, as were areas disclosed as not resolved[.] in the nineteen-page loss estimate statement." (Pls.' Omnibus Opp'n Br. 4.) Plaintiffs assert that their losses "are not fully determinable as the losses are cumulative as time passes." (*Id.*)

Hartford-Flood opposed and filed a Motion for Summary Judgment asserting that Plaintiffs cannot successfully recover additional damages for Superstorm Sandy under the SFIP. (Hartford-Flood's Moving Br. 1-2, Docket No. 14-3094.) Hartford-Flood argues that Plaintiffs cannot produce competent evidence of additional covered damage. (*Id.* at 6.) Hartford-Flood asserts that Plaintiffs "bear the burden of proving every aspect of their claim," and Plaintiffs have not done so. (*Id.* (quoting *Brandt v. Am. Bankers Ins. Co. of Fl.*, No. 08-5760, 2010 WL 2262333, at *1 (W.D. Wash. June 4, 2010)).) Hartford-Flood further contends that Plaintiffs "declined to identify the extent of flood damage or distinguish between flood damage and damage caused by rain or another non-flood source," and that the SFIP only covers direct flood damage. (*Id.*) Hartford-Flood also argues that Plaintiffs cannot recover because Plaintiffs: (1) "failed to provide a comprehensive inventory of covered contents"; (2) "have not provided detailed repair estimates for [their] damaged house"; and (3) "conclud[ed] on [their] own that [the structure] was a total loss and not worth the effort [to repair]." (*Id.* at 6-7.)

Finally, Hartford-Flood argues that Plaintiffs cannot recover under the SFIP because they have not complied with all the requirements of the policy. (*Id.* at 7.) Hartford-Flood states that "a policyholder's failure to strictly comply with the terms of the policy requires dismissal of their suit." (*Id.* (citing SFIP VII(R)).) Accordingly, Hartford-Flood argues that Plaintiffs: (1) failed to separate damaged and undamaged goods as required by the SFIP because they "let everything in

the house fall to ruin without any attempt at salvage or removal"; (2) failed to produce a complete and proper inventory of personal items in accordance with SFIP procedures because they "still[,] [after four years, have] not completed an inventory of damaged property"; and (3) failed to properly mitigate their damages pursuant to the SFIP given that "the full extent of [their] mitigation effort[s] was to open the windows and move property up on chairs." (*Id.* at 7-9.)

### D.   Superstorm Sandy Dock Claims (Docket No. 13-7160)

Plaintiffs move for summary judgment against Hartford-Flood and Hartford-Property, alleging that they are entitled to recovery of damages to their dock caused by an unmoored boat during Superstorm Sandy. (Pls.' Omnibus Opp'n Br. 3.) Plaintiffs argue that "the boat [dock] damage should have been fully covered by the wind rain policy." (*Id.*) Plaintiffs contend that "[Defendants were] told they could have submitted subrogation against the boat owner(s) for recovery . . . [, which] was totally ignored by [claims] staff." (*Id.* at 3.) Plaintiffs also contend that they provided Defendants' appraisal agent with pictures and other documentation in support of their claim. (*Id.*)

Hartford-Flood opposed Plaintiffs' Motion and also moved for Summary Judgment, alleging that Plaintiffs cannot recover because damages to docks are excluded from the SFIP. (Hartford-Flood's Moving Br. 5, Docket No. 13-7160.) Hartford-Flood argues that Plaintiffs cannot recover for damage to their dock under the SFIP because the SFIP "only pay[s] for direct physical loss by or from flood," and does not cover indirect or consequential damages. (*Id.* (discussing SFIP V(A)).) Hartford-Flood further argues that the SFIP does not cover damage to docks because docks are listed as a specific exclusion under Article IV of the SFIP. (*Id.*) Specifically, Hartford-Flood contends that, under Article IV of the SFIP, "[a]ny decks, patios, or other surfaces located outside the perimeter exterior walls of the insured building are similarly

excluded from coverage." (*Id.*) Hartford-Flood also argues that, although the SFIP provides coverage for debris removal, it only covers "certain debris." (*Id.* at 6.) Hartford-Flood contends that "[i]f the debris is not owned by the policyholder, only debris on or in the insured property is covered." (*Id.*) Hartford-Flood argues that, because the debris is located on the lawn and "lawns are excluded from the scope of the SFIP," removal of the debris is not covered under the policy. (*Id.*)

Hartford-Property separately opposed Plaintiffs' Motion and filed its own Motion for Summary Judgment, alleging that the anti-concurrent and anti-sequential causation provision bars Plaintiffs from recovering damages to the dock. (Hartford-Property's Omnibus Opp'n Br. 6.) Hartford-Property argues that Plaintiffs cannot recover for the dock damages because damage caused by tidal surges are excluded by the policy. (*Id.*) Hartford-Property argues that the presence of this "anti-concurrent [and anti-sequential] causation provision in the exclusion makes irrelevant whether the storm tidal surge damaged the dock" directly or indirectly. (*Id.*) Finally, Hartford-Property argues that the Court should find that the "water damage exclusion . . . exclude[s] damages specifically caused by objects carried atop or propelled by water." (*Id.*)

V.    **Discussion**

A.    **Hurricane Irene Flood Claim (Plaintiffs' Motion against Hartford-Flood & Hartford-Flood's Motion against Plaintiffs) (Docket No. 13-6910)**

The Court finds that the SFIP, by its terms, precludes Plaintiffs' request for recovery. It is widely recognized that federal common law governs the interpretation of the SFIP. *Linder & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999). The SFIP is interpreted "in accordance with its plain, unambiguous meaning, remaining cognizant that its interpretation should be uniform throughout the country." *Id.* (internal quotations and citation omitted). "Because any claim paid by a WYO Company is a direct charge to the United States Treasury, strict

adherence to the conditions precedent to payment is required." *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005). "Although exclusions and ambiguities in the policy are strictly construed against the insurer, [courts] must give effect to the '[c]lear policy language,' and refrain from 'tortur[ing] the language to create ambiguities.'" *Linder & Assocs., Inc.*, 166 F.3d at 550 (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

The text of Article VII, Section J, of the SFIP provides that:

> In case of a flood loss to insured property, you must:
>
> 4.  Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>
>     a.  The date and time of loss;
>     b.  A brief explanation of how the loss happened;
>     c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>     d.  Details of any other insurance that may cover the loss;
>     e.  Changes in title or occupancy of the covered property during the term of the policy;
>     f.  Specifications of damaged buildings and detailed repair estimates;
>     g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>     h.  Details about who occupied any insured building at the time of loss and for what purpose; and
>     i.  The inventory of damaged personal property described in J.3. above.

SFIP VII (J)(4). Strict adherence to the 60-day period for proof of loss "is a pre-requisite to recovery under the SFIP." *Suopys*, 404 F.3d at 810.

Here, FEMA waived the standard 60-day provision for Hurricane Irene claims and extended the deadline to 150 days from the date of loss. (*See* Hartford-Flood's CSUMF ¶ 7, Docket No. 13-6910; *see also* Hartford-Flood's Summ. J. Mot., Ex. E, Docket No. 13-6910, ECF No. 91-

4.) Under this extension, Plaintiffs' proof of loss and supporting documentation were required to be submitted by January 23, 2012. (*See* Hartford-Flood CSUMF ¶ 7, Docket No. 13-6910.) A representative from FEMA investigated and determined that Plaintiffs submitted the signed proof of loss on March 5, 2012. (Hartford-Flood CSUMF ¶ 11; *see also* Hartford-Flood's Summ. J. Mot., Ex. G, Docket No. 13-6910, ECF No. 91-4.) Because the SFIP is unambiguous in its language concerning the proof of loss deadline and strict compliance is required, Plaintiffs cannot recover on their flood claim. The Court, therefore, denies Plaintiffs' Motion for Summary Judgment and grants Hartford-Flood's Motion for Summary Judgment with regard to Plaintiffs' Hurricane Irene flood claims.

**B.    Hurricane Irene (Docket No. 13-6910) and Superstorm Sandy (Docket No. 14-3094) Property Claims (Plaintiffs' Motions against Hartford-Property)**

Plaintiffs argue that Hartford-Property's payments for Hurricane Irene and Superstorm Sandy were improperly calculated. (*See generally* Pls.' Summ. J. Mot.) The Court, however, finds that numerous disputes of material fact exist. (*See* Hartford-Property's Omnibus Opp'n Br. 10.) Specifically, these issues include determination of: (1) the cause of the damages in question; (2) whether the damages at issue was pre-existing; and (3) how the damages should be calculated. (*See id.*) Plaintiffs' submitted loss estimates, moreover, are limited to their best estimates, and, accordingly, fail to sufficiently establish their accuracy at the summary-judgment-stage. (*See* Pls.' Additional Documents 7; *see also* Hartford-Property's Omnibus Opp'n Br. 9; Jacobsen Dep. 145:16-153:17.) The Court, therefore, denies Plaintiffs' Motion for Summary Judgment with regard to their Hurricane Irene and Superstorm Sandy claims against Hartford-Property.[15]

---

[15] The Court's discussion here does not include Plaintiffs' claims against Hartford-Property regarding the dock, as the Court discusses the dock claim in a separate section below.

**C.**   **Superstorm Sandy Flood Claim (Plaintiffs' Motion against Hartford-Flood & Hartford-Flood's Motion against Plaintiffs) (Docket No. 14-3094)**

As part of the proof of loss, policyholders must "[p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss . . . [and] [a]ttach all bills, receipts, and related documents." SFIP VII (J)(3). While "[i]nsurance adjusters may furnish the insured with a proof of loss form as a courtesy only, . . . the onus remains on the insured to timely submit proof of loss." *Uddoh v. Selective Servs. Ins. Co. of Am.*, No. 12-419, 2014 WL 7404540, at *4 (D.N.J. Dec. 29, 2014). An insured's failure to submit a proper proof of loss bars recovery. *Suopys*, 404 F.3d at 810.

Here, Plaintiffs have not completed a sufficient inventory of damaged items after three years. Plaintiffs argue that they submitted a nineteen-page list (the "proof of loss document") containing their best estimates concerning the values of various items of property before and after the loss. (Pls.' Omnibus Opp'n Br. 5; Jacobsen Dep. 145:7-9, 147:24-148:14, 150:1-21.) Plaintiffs' proof of loss document, however, is deficient. First, Plaintiffs' proof of loss document is not signed and sworn as required under the SFIP. *See* SFIP VII(J)(4); *Uddoh*, 2014 WL 7404540, at *4.

Additionally, Plaintiffs' proof of loss document lacks details related to how the damages asserted occurred. In *Uddoh*, the Court determined that the plaintiff's submitted estimates were "completely devoid of any details as to how the damage occurred, whether the damage was caused by flooding (which the adjuster questioned), and how much of the [insured's claim] was attributed to each repair." *Uddoh*, 2014 WL 7404540, at *6. Here, Plaintiffs' estimates similarly lack any supporting documentation or details as to how the damage occurred, the nature of the damage, and which items were damaged by flooding as opposed to other causes. (*See* Jacobsen Dep. 147:19-148:13.)

21

In light of Plaintiffs' failure to include sufficient detail, documentation, and explanation, it is evident that no reasonable jury could find Plaintiffs' proof of loss document to be sufficient. Plaintiffs do not even attempt to estimate the age for most of the claimed items, instead merely stating that most of the property was purchased sometime between 2005 and 2011. Further, Plaintiffs state that every single item must be completely replaced and that the replacement cost for all of the items is higher than the original purchase price without providing any justification. For these reasons, Plaintiffs have failed to provide a proper proof of loss document. The Court, therefore, denies Plaintiffs' Motion for Summary Judgment and grants Hartford-Flood's Motion for Summary Judgment with regard to Plaintiffs' Superstorm Sandy flood claim.

**D.     Superstorm Sandy Dock Claims (Docket No. 13-7160)**

      1.    <u>Flood Coverage (Plaintiffs' Motion against Hartford-Flood & Hartford-Flood's Motion against Plaintiffs)</u>

The Court finds that the SFIP does not allow Plaintiffs' recovery of their dock losses from Hartford-Flood. Losses to docks are not covered by the SFIP. Article IV of the SFIP specifically excludes from coverage, "[f]ences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, *and docks*." SFIP IV(9) (emphasis added). The SFIP also excludes "portions of walks, walkways, decks, driveways, patios and other surfaces . . . located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located." *Id.* Based on the plain reading of the SFIP, Plaintiffs cannot recover for damage to the dock from Hartford-Flood.

Additionally, under the SFIP, "[l]and, land values, lawns, trees, shrubs, plants, growing crops, or animals," are not insured property. SFIP IV(6). The debris from the unmoored boat was located on Plaintiffs' yard. (Hartford-Flood's Moving Br. 4, Docket No. 13-7160.) Because the SFIP covers removal of non-owned debris only if the debris is on or in the insured property, and the debris was on Plaintiffs' lawn which is not insured property, Hartford-Flood is not required to

provide coverage for the debris removal. SFIP III(C)(1). The Court, therefore, denies Plaintiffs'
Motion for Summary Judgment and grants Hartford-Flood's Motion for Summary Judgment with
regard to Plaintiffs' Superstorm Sandy flood claim for damage to their dock.

> 2.   <u>Property Coverage (Plaintiffs' Motion against Hartford-Property &
>       Hartford-Property's Motion against Plaintiffs)</u>

Plaintiffs are also unable to recover from Hartford-Property for their dock losses because
the insurance policy excludes coverage for loss "[c]aused by . . . pressure or weight of water . . . ,
whether driven by wind or not, to a: . . . [p]ier, wharf or dock." (Hartford-Property's Summ. J.
Mot., Ex. B, at 74, Docket No. 13-7160.)[16] Further, the policy also excludes coverage for "loss
caused directly or indirectly by" "water damage," with "water damage" defined to include "flood,
surface water, waves, tidal water, overflow of a body of water . . . caused by human or animal
forces or any act of nature." (*Id.* at 79-80.) Additionally, the insurance policy contains an anti-
concurrent and anti-sequential causation clause that precludes coverage, which states that: "[the
policy does] not insure for loss caused directly or indirectly by any of the [water damage]. Such
loss is excluded *regardless of any other cause or event contributing concurrently or in any
sequence to the loss.*"[17] (*Id.* at 79 (emphasis added).) As a result, the policy does not cover damage

---

[16] When referencing Exhibit B, the Court cites to the ECF page numbers stamped on the header of
the electronically filed version of the document as the page numerations are not continuous
throughout the document.

[17] Anti-concurrent and anti-sequential causation clauses have been upheld in New Jersey by both
federal and state courts. *See Lam Investment Research, LLC v. Pub. Serv. Mutual Ins. Co.*, No. 12-
5576, 2016 WL 6634931, at *4 (D.N.J. April 1, 2016); *Assurance Co. of Am., Inc. v. Jay-Mar,
Inc.*, 38 F. Supp. 2d 349, 354 (D.N.J. 1999); *Petrick v. State Farm Fire & Cas. Co.*, No. L-43-07,
2010 WL 3257894, at *7 (N.J. Super. Ct. App. Div. Aug. 13, 2010); *Ashrit Realty LLC v. Tower
Nat'l Ins. Co.*, No. A-1647-13T4, 2015 WL 248490, at *5 (N.J. Super. Ct. App. Div. Jan. 20, 2015)
(citing *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 699 (N.J. Super. Ct. App. Div. Oct. 15, 2004)).

to the dock, regardless of whether Plaintiffs have correctly identified wind and rain as additional contributing causes of the damage.

Similarly, due to the water damage exclusion and the anti-concurrent and anti-sequential causation provision, the policy does not cover removal of debris, consisting of the unmoored boat, from the Property. Here, it is undisputed that the debris was caused "directly or indirectly" by water damage, as a result of tidal surges, waves, and overflow of a body of water, and removal of the debris, therefore, is not covered under the policy. *See Keelen v. QBE Ins. Corp.*, No. 13-6941, 2016 WL 1690088, at *3 (D.N.J. April 27, 2016) (granting summary judgment for defendant insurer because an anti-concurrent and anti-sequential causation provision, in conjunction with a water damage exclusion provision, excluded coverage where water damage contributed to causing the neighboring house to impact the insured's house).

Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment and grants Hartford-Property's Motion for Summary Judgment with regard to Plaintiffs' Superstorm Sandy property claim for damage to their dock.

**VI.    Conclusion**

For the reasons set forth above, the Court DENIES Plaintiffs' Motions for Summary Judgment and GRANTS Defendants' Motions for Summary Judgment. An order consistent with this Memorandum Opinion will be entered.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** March 31st, 2017